56 F.3d 73
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph ALLEN, Jr. Defendant-Appellant.
 No. 94-50027.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1995.
Decided June 1, 1995.
 
 1
 Before: SCHROEDER and KLEINFELD, Circuit Judges, and KING,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Joseph Allen, Jr., appeals his conviction and sentence for using a firearm during a violent crime, in violation of 18 U.S.C. Sec. 924(c)(1). Allen asserts that (1) the trial court confused the jury by instructing that "constructive possession" is sufficient for "using or carrying" a firearm, and that there is insufficient evidence of actual or constructive possession; and (2) the court improperly double-counted in sentencing by adjusting upward based on the same conduct for both (a) reckless endangerment during flight and (b) the value of the loss resulting from that flight. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and affirm.
 
 DISCUSSION
 
 4
 I. Use of a Firearm.
 
 
 5
 Whether a court correctly instructed the jury on statutory elements is a question of law reviewed de novo. United States v. Mundi, 892 F.2d 817, 818 (9th Cir. 1989), cert. denied, 498 U.S. 1119 (1991). "Jury instructions are considered as a whole to determine if they are misleading or inadequate." United States v. Spillone, 879 F.2d 514, 525 (9th Cir. 1989), cert. denied, 498 U.S. 878 (1990).
 
 
 6
 18 U.S.C. Sec. 924(c)(1) provides in pertinent part:
 
 
 7
 Whoever, during and in relation to any crime of violence ... uses or carries a firearm, shall, in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years[.]
 
 
 8
 In addition to a "crime of violence,"[1] the section contains two elements: (1) the firearm was "related to" the crime, and (2) the defendant "used or carried" the firearm. United States v. Harper, 33 F.3d 1143, 1149 (9th Cir. 1994) (citing United States v. Torres-Medina, 935 F.2d 1047, 1048-49 (9th Cir. 1991)).
 
 
 9
 In Torres-Medina, the Ninth Circuit elaborated on the "use" element. The court recognized that "[a]t a minimum ... the firearm must have been 'within the possession or control' of the defendant." 935 F.2d at 1049 (citing United States v. Stewart, 779 F.2d 538, 540 (9th Cir. 1985)) (other citation omitted). For a defendant to have "possession or control" in this context, the firearm must be "available."
 
 
 10
 ... a firearm may be considered available for purposes of section 924(c)(1) if its physical proximity to the defendant at any time during the commission of the crime, or during arrest, supports the inference that it emboldened him to commit the underlying offense or to resist arrest. Whether such an inference is legitimately raised will depend on the circumstances of the individual case. We therefore decline to quantify the test in terms of feet, yards, or miles.
 
 
 11
 935 F.2d at 1050. Applying this test, Torres-Medina held that a handgun located alongside drug paraphernalia hidden underneath a house was "available" to a paraplegic defendant because, inter alia, the defendant owned the gun and it emboldened him to commit the underlying drug crime. Id. Despite the expansive definition, the Torres-Medina court expressed reluctance to adopt "constructive possession principles." 935 F.2d at 1049 n.2.
 
 
 12
 Here, the court responded to the jury's inquiry with a supplemental instruction defining "uses or carries a firearm," and told the jury that "constructive possession" could suffice for the element. The trial court here defined the phrase as follows:
 
 
 13
 A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.
 
 
 14
 The jury's general verdict did not distinguish between actual and constructive possession. In this case, two independent theories--actual and constructive possession--support guilt. Three witnesses testified that they saw Allen carrying a black handgun. Several witnesses testified that both Allen and the girl yelled "this is a takeover, everyone put your hands up." On the other hand, three other witnesses testified that they did not (or could not) see Allen with a handgun, and a black handgun was never recovered from the crime scene. However, merely because there is contradictory evidence does not require reversal. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 15
 In addition to the substantial evidence of actual possession, the uncontroverted testimony was that the girl pointed a silver handgun at employees during the heist. Police found the gun in the getaway car driven by Allen. The testimony indicates that Allen and the girl coordinated their efforts, both during the robbery and the attempted escape. The evidence was certainly sufficient for a reasonable juror to find that the silver handgun brandished by the girl "emboldened" Allen to commit the robbery and was "available to assist or aid" in the commission of the crime. Stewart, 779 F.2d at 540. An erroneous jury instruction will not result in reversal unless "'there is a reasonable possibility that the error materially affected the verdict."' United States v. Rubio-Villareal, 967 F.2d 294, 296 n.3 (9th Cir. 1993) (en banc) (quoting United States v. Ville-Valdez, 554 F.2d 911, 915 (9th Cir. 1977)). Under the facts of this case, there is no reasonable possibility that the error if any in the instruction materially affected the verdict. Thus, assuming, without deciding, that the court erred in its supplemental instruction regarding constructive possession, the error was harmless.
 
 
 16
 II. Sentencing.
 
 
 17
 The court reviews district court interpretations of the Sentencing Guidelines de novo. United States v. Reese, 2 F.3d 870, 893 (9th Cir.), cert. denied, 114 S. Ct. 928 (1993). Factual findings in sentencing are reviewed for clear error. Id.
 
 A. Reckless Endangerment
 Guidelines section 3(C)1.2 provides:
 
 18
 If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels.
 
 
 19
 U.S.S.G. Sec. 3C1.2 (1994). Sufficient evidence supports the trial court's finding that Allen recklessly created a substantial risk of death or serious bodily injury. Allen drove the getaway car on a several mile high-speed chase. He ran several red-light intersections, and drove onto the sidewalk, narrowly missing several pedestrians. A 2-level increase was appropriate. United States v. Luna, 21 F.3d 874, 885 (9th Cir. 1994).
 
 B. Amount of Loss
 
 20
 An increase in the offense level for robbery was also warranted for the amount of loss. Guidelines section 2B3.1(b)(6) provides:
 
 
 21
 If the loss exceeded $10,000, increase the offense level as follows:
 
 
 22
 ....
(A) $10,000 or less no increase
(B) More than $10,000 add 1 [level]
(C) More than $50,000 add 2 [levels].
 
 
 23
 The Guidelines define "loss" as "the value of the property taken, damaged or destroyed." U.S.S.G. Sec. 2B1.1, Application Note 2. And the specific offense characteristics may be based on "all acts ... committed ... during the commission of the offense of conviction, in preparation for the offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. Sec. 1B1.3(a)(1)(A).
 
 
 24
 It is undisputed that the total loss resulting from the robbery and subsequent flight was $52,726.60 (approximately $7,500 cash and $45,000 in property damage). The final crash damaged Allen's stolen getaway car, two police vehicles, and two other uninvolved vehicles. Thus, a two-level enhancement for the amount of loss was appropriate. See United States v. Cruz-Santiago, 12 F.3d 1 (1st Cir. 1993) (damage to car stolen during flight from bank robbery counted as loss for bank robbery under Sec. 2B3.1(b)(6)), cert. denied, 114 S. Ct. 1853 (1994).
 
 C. Double-Counting
 
 25
 Allen asserts that the court impermissibly double-counted by enhancing his sentence for both loss and reckless endangerment during flight because both enhancements were based on the same conduct. See Application Note One of Sec. 3C1.2 ("Do not apply this enhancement where the offense guideline in Chapter Two [e.g., Sec. 2B3.1(b)(6)] ... results in an equivalent or greater increase in offense level solely on the basis of the same conduct.").
 
 
 26
 However, no double-counting occurred because the enhancements were not based on the same conduct. The conduct causing the significant property damage (flight from a bank robbery and the subsequent damaging of vehicles) differed from the conduct that recklessly endangered life (e.g., driving on sidewalks).
 
 
 27
 AFFIRMED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Bank Robbery is a crime of violence for purposes of section 924(c)(1). United States v. Harper, 33 F.3d 1143, 1149 n.5 (9th Cir. 1994), cert. denied, 115 S. Ct. 917 (1995)